IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-HC-2119-D

| | |
|---|---|
| RICHARD EUGENE MURPHY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>ROBERT JONES, Admin., )<br>Pasquotank Correctional Institution, )<br>)<br>Respondent. ) | **ORDER** |

Richard Eugene Murphy ("Murphy" or "petitioner"), a state inmate, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1, 3]. On June 16, 2010, respondent answered the petition [D.E. 6] and filed a motion for summary judgment [D.E. 7]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Murphy about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 9]. On June 28, 2010, Murphy filed a response in opposition to the motion [D.E. 10]. As explained below, respondent's motion for summary judgment is granted.

I.

The North Carolina Court of Appeals summarized the facts of this case as follows:

> On 11 December 2005, defendant entered the EB Games video game retail store as it was closing. Mr. Gendron, a store employee, was counting the money from two registers when he heard a second store employee, Mr. Baez, call his name. Mr. Gendron testified that he saw "someone right behind [Mr. Baez] with a gun, and the guy tells me, you know: You know what I'm after." Mr. Gendron then gave defendant the money from the store's registers, and defendant demanded that he be shown the store's safe and security taping system. Mr. Gendron took defendant to the back room to the safe, which was empty, and removed the security tape and gave it to defendant. Defendant then exited the store through the back door with the money but left the security tape behind.

> Mr. Gendron testified that defendant had used "[a] silver pistol." He further testified that, while he did not know much about guns, he knew defendant's gun was not a revolver. Mr. Gendron testified that he was "[t]errified, just worried about getting [defendant] out of there without anybody getting hurt." The State offered the security video recording of the robbery which showed Mr. Gendron with his hands up because he did not "want to get shot." Defendant's fingerprints were found on the security video tape as well as the plastic tray which had held the money from the registers. The State also presented evidence that a plastic magazine clip from a soft pellet gun was found in the backyard of the store.

State v. Murphy, 189 N.C. App. 532, 659 S.E.2d 491, 2008 WL 850681, at *1 (2008) (unpublished table decision). The court, finding no error, affirmed Murphy's conviction and sentence. Id. at *2. At trial, Murphy allowed his attorney "to argue in closing that the jury may determine that he has criminal culpability for a lesser included offense to robbery with a dangerous weapon." Pet. at 71 (notice of concession signed by Murphy). Additionally, Murphy "stipulate[d] that his fingerprints match the fingerprints on the coin basket and the VHS security tape . . . ." Id. at 72 (notice of stipulation signed by Murphy).

On November 4, 2008, Murphy filed a pro se motion for appropriate relief ("MAR") in Wake County Superior Court, which the court summarily denied on May 1, 2009. Pet. ¶ 11(a) & Ex. 1 at 20–36. On May 18, 2009, Murphy filed a pro se amendment to his MAR in Wake County Superior Court, which the court construed as a second MAR and summarily denied on May 20, 2009. Id. ¶ 11(b) & Ex. 1 at 37–53. On June 25, 2009, Murphy filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals, which the court denied on July 10, 2009. Id. ¶ 11(c) & Ex. 1 at 54–63 (petition), 72 (order denying petition).

On September 14, 2009, Murphy filed his section 2254 petition. On April 27, 2010, Murphy amended his petition to substitute Robert Jones as the respondent and assert an additional claim [D.E. 3]. Murphy asserts seven claims: (1) impermissibly suggestive identification and improper police investigative procedure; (2) ineffective assistance of trial counsel; (3) impermissible

amendment to indictment through jury instruction; (4) ineffective assistance of appellate counsel; (5) prosecutorial misconduct; (6) erroneous denial of his MARs; and, (7) violation of due process. Pet. at 5–104; Am. Pet. at 2–4.

## II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state-court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from

3

a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." See id. at 407; Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

A.

First, Murphy claims that the police used "impermissibly suggestive identification" and "improper police investigative procedure" in arresting Murphy and showing his picture to the store manager, who was not present when the crime occurred. See Pet. at 5–7. Murphy apparently challenges the fact that two days after the robbery, when "2 fingerprints found at the scene returned . . . Murphy as a potential suspect[,] Lead Detective D.E. Eckert returned to E.B. Games with a DMV photo of the petitioner and" showed the photo to Heather Cribbs, the store manager, who was not present during the robbery. Id. at 6. Murphy raised this issue in his MAR. Id. at 7; see also Mem. Supp. Mot. Summ. J. at 5.

Murphy has not shown that the MAR court's ruling on this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See Satcher v. Pruett,

4

126 F.3d 561, 566–67 (4th Cir. 1997); see generally Stroud v. Polk, 466 F.3d 291, 295–96 (4th Cir. 2006); Allen v. Lee, 366 F.3d 319, 323–24 (4th Cir. 2004) (en banc) (per curiam); Hartman v. Lee, 283 F.3d 190, 198–99 (4th Cir. 2002). Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Alternatively, there was no prejudice. The jurors were able to view the security video of the robbery and make their own comparisons to Murphy. Mem. Supp. Mot. Summ. J., Ex. 4 at 170–71 (transcript). Additionally, there was fingerprint evidence linking Murphy to the crime. Thus, this claim fails. See Satcher, 126 F.3d at 569 & n.3 ("the jury was able to compare the person depicted in the sketches" with Satcher and there was "very strong" physical evidence linking petitioner with the crime, including DNA evidence).

B.

Next, Murphy claims that his trial and appellate counsel were ineffective. Pet. at 7–73, 84–97. Murphy first raised these claims in his MAR. Id. at 8, 84.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel at trial and on direct appeal. See Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (per curiam); Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish two things. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under prevailing professional norms. See Van Hook, 130 S. Ct. at 16; Strickland, 466 U.S. at 687–91. In reviewing this element, a court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.; Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008).

5

Second, a petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. See Smith v. Robbins, 528 U.S. 259, 285–86 (2000). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Id. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. See, e.g., Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Murphy has submitted a laundry list of perceived deficiencies in his counsel's performance. Pet. at 8–73, 85–94. However, Murphy's attack on the performance of his trial and appellate counsel fails because he has not shown that the MAR court's rejection of his ineffective assistance of counsel claims was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)–(e); Sharpe, 593 F.3d at 378.

As for Murphy's claims regarding the performance of his trial counsel, Murphy fails to establish that his trial counsel acted unreasonably or to show prejudice from any alleged trial error. Accordingly, this claim fails.

As for Murphy's claims regarding the performance of his appellate counsel, Murphy attacks the failure to challenge the sufficiency of the evidence. Unfortunately for Murphy, he has not demonstrated that he would have likely prevailed on appeal. Notably, the standard of review for a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a

reasonable doubt. See, e.g., Wright v. West, 505 U.S. 277, 283–84 (1992) (plurality opinion); Jackson v. Virginia, 443 U.S. 307, 319 (1979). In this case, there is overwhelming evidence in the record demonstrating that Murphy committed the robbery with a dangerous weapon. Accordingly, Murphy cannot establish prejudice, and this claim fails.

C.

Next, Murphy claims that he was subjected to an "impermissible amendment to indictment through instruction" and denied a jury instruction allowing the jury to find him guilty of a lesser-included offense. Pet. at 73–83. Murphy raised "half of this issue on direct appeal" (his lesser-included offense claim) and the other portion (his claim of amendment to the indictment) in his MAR. Id. at 73, 83; see Mem. Supp. Mot. Summ. J. at 12, 15.

As for his claim asserting an impermissible variance between the indictment and the jury instructions at trial, Murphy notes that the indictment charged him with taking "$1,056.17 in US currency belonging to E. B. Games, Inc. from the person, or person's presence, of Jose Baez[,]" yet the trial court's jury instructions described the crime at issue as taking "property from the person of or the presence of or place of business [of] Jonathan Gendron or EB Games . . . ." Pet. at 76–77 (transcript of jury instructions), 79 (indictment).

A "constructive amendment" of an indictment occurs "'[w]hen the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment[.]'" United States v. Ashley, 606 F.3d 135, 141 (4th Cir. 2010) (quoting United States v. Malloy, 568 F.3d 166, 178 (4th Cir. 2009). "A constructive amendment is a fatal variance because the indictment is altered 'to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" United States v. Randall, 171 F.3d 195, 203 (4th Cir.

7

1999) (quoting United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991)). Any other variance "does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." Ashley, 606 F.3d at 141 (internal quotation marks and citation omitted). Moreover, a claim alleging defects in a state court indictment is not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process. See, e.g., Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).

Here, Murphy has not shown that the trial court's jury instructions impermissibly broadened the basis for his conviction. Both Baez and Gendron were present at the store when the robbery occurred. Murphy has not shown that the alleged variance surprised him or hindered his defense in any way, or that he now faces a risk of being convicted for robbing Baez in addition to Gendron. Likewise, Murphy has not shown a deprivation of due process. Accordingly, Murphy has failed to show that the MAR court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, and this claim fails. See 28 U.S.C. § 2254(d)–(e); Sharpe, 593 F.3d at 378.

As for his assertion that he was denied a jury instruction allowing the jury to find him guilty of a lesser-included offense, Murphy raised this claim on direct appeal, and the North Carolina Court of Appeals explained at length why it rejected the argument. See Murphy, 2008 WL 850681, at *1–2.

Murphy has failed to show that the North Carolina Court of Appeals' rejection of this claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)–(e); Sharpe, 593 F.3d at 378; Bates v. Bodison, No.

8

08-2273-HMH-PJG, 2009 WL 2423766, at *11 (D.S.C. Aug. 5, 2009) (unpublished), appeal dismissed, 368 F. App'x 335 (4th Cir. 2010) (per curiam) (unpublished). Thus, this claim fails. Alternatively, even if the court were to find that there is a constitutional right to a lesser-included offense charge in a non-capital case, Murphy's claim still fails on the merits. See, e.g., Larry v. Branker, 552 F.3d 356, 364–68 (4th Cir. 2009); Bates v. Lee, 308 F.3d 411, 418 (4th Cir. 2002).

D.

Next, Murphy alleges prosecutorial misconduct by giving notice of intent to introduce evidence of Murphy's 1990 conviction for robbery, presenting opening arguments during jury selection, presenting a theory not supported by the evidence, calling Cribbs as a witness when she was not present during the crime, requesting jury instructions "to match the trial instead of the indictment[,]" producing a superseding indictment without a warrant, and withholding fingerprint evidence. Pet. at 98–102. Murphy raised this claim in his MAR. Id. at 100.

"To prevail on a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's . . . conduct [was], in fact, improper and (2) that such . . . conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007). Murphy, however, has not provided any evidence that the prosecutor acted improperly. Additionally, Murphy has not explained how the alleged prosecutorial misconduct prejudiced him. Moreover, there is overwhelming evidence in the record to establish that Murphy was guilty of robbery with a dangerous weapon. Therefore, this claim fails.

E.

Next, Murphy claims that "[t]he lower courts were unreasonable in the denial of the petitioners motion, and petitions presented to the courts for review." Pet. at 103–04. Murphy complains that he was not given an evidentiary hearing and that the state courts denied his MAR

9

"without finding of fact or law, or actual reason for denial of his motions or petition." Id.

A state court's summary adjudication (i.e., "without finding of fact or law, or actual reason for denial") does not violate any federal constitutional right. "[W]hen assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." Larry, 552 F.3d at 365 (alterations in original) (quotation omitted); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999) ("A state court's perfunctory decision is reasonable if it is at least minimally consistent with the facts and circumstances of the case." (quotation omitted)). Additionally, N.C. Gen. Stat. § 15A-1420(c) governs the state court's decision on whether to hold an evidentiary hearing on a MAR. Accordingly, Murphy's challenge to that decision is either one which rests on state law and thus "does not fall within the proper scope of our federal habeas review[,]" Larry, 552 F.3d at 368, or fails because Murphy has not shown that the decision not to hold an evidentiary hearing was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. See, e.g., Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998).

F.

Finally, Murphy challenges a jury instruction which stated:

that the defendant had a firearm in his possession at the time he obtained the property or that it reasonably appeared to Jonathan Gendron that a firearm was being used, in which case you may infer that the said instrument was what the defendant's conduct represented it to be.

Mem. Supp. Mot. Summ. J., Ex. 4 at 314 (transcript); see Am. Pet. at 2. Murphy contends that the statute he is charged with violating, N.C. Gen. Stat. 14-87(a), "does not . . . allow speculation or inference" as to whether a weapon was used. Am. Pet. at 2.

The North Carolina Court of Appeals noted that under N.C. Gen. Stat. § 14-87(a), "the State

10

need only prove that the victim reasonably believed that the defendant possessed, used, or threatened to use a firearm in the perpetration of the crime." Murphy, 2008 WL 850681, at *2 (citing State v. Lee, 128 N.C. App. 506, 510, 495 S.E.2d 373, 376 (1998)); see Lyons v. Lee, 203 F. Supp. 2d 512, 529 (M.D.N.C. 2002). Murphy has not shown how this settled issue of state law is contrary to, or involves an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Thus, the claim fails.

III.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 7] and DISMISSES Murphy's application for a writ of habeas corpus [D.E. 1, 3]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The Clerk of Court shall close this case.

SO ORDERED. This 28 day of February 2011.

*[signature]*
JAMES C. DEVER III
United States District Judge